UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL MELLINGER,

        Plaintiff,

vs.

Case No. 11-CV-11326

HON. GEORGE CARAM STEEH

MIDWESTERN AUDIT SERVICE, INC.,

        Defendant.
_____/

OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT [DOC. 12] AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. 13]

This matter comes before the court on cross motions for summary judgment filed by the parties in this action. Oral argument was held on January 25, 2012. For the reasons stated in this opinion and order, summary judgment is granted in favor of defendant.

FACTUAL BACKGROUND

Plaintiff, Paul Mellinger, was listed as the debtor on two hospital bills which were placed on his credit report by defendant, Midwestern Audit Service. Plaintiff claims the bills, in the amount of $176 and $120, were his wife's responsibility because they arose from visits she made to the emergency room at Rochester Emergency Group on July 29, 2009 and August 21, 2009, respectively. The hospital sent plaintiff three letters attempting to collect each of the bills. (Defendant's Exhibits 2 and 3). Eventually the outstanding bills were transferred to defendant for collection. The $176 bill was sent to

defendant for collection on December 31, 2009 and the $120 bill was sent for collection on February 26, 2010.

There is no evidence that either plaintiff or his wife attempted to resolve or dispute the bills prior to their being transferred to defendant for collection. (See, Charlotte Judkins Affidavit).

On January 11, 2010, defendant sent plaintiff a letter regarding the $176 debt. The letter warned plaintiff that he had 30 days to contact defendant to dispute the validity of the debt or it would be assumed to be valid. Plaintiff did not contact defendant. The next letter regarding the $176 debt was a TRW Notification Letter sent on February 10, 2010. This letter explained that plaintiff had 15 days to pay the debt or it may be reported to a credit reporting agency. Further notices of past due account were sent to plaintiff on May 28, 2010, September 17, 2010, and January 18, 2011.

On March 9, 2010, defendant sent plaintiff a letter regarding the $120 debt. The letter warned plaintiff that he had 30 days to contact defendant to dispute the validity of the debt or it would be assumed to be valid. Plaintiff did not contact defendant. The next letter regarding the $120 debt was a TRW Notification Letter sent to plaintiff on April 13, 2010. This letter explained that plaintiff had 15 days to pay the debt or it may be reported to a credit reporting agency.

On May 8, 2010, 60 days after receipt of the first letter, plaintiff orally disputed that the $120 bill was his. Defendant's account history notes indicate that plaintiff called defendant and explained to "Debra" that the medical bill was his wife's responsibility and he would like the bill taken out of his name and put into her name. The account notes show that Debra indicated she would research the issue and contact plaintiff the next

week. Defendant did not research the matter, however, allegedly because plaintiff did not put his dispute in writing. (Stacy Vaughn dep., 60).

On June 7, 2010, defendant reported the $120 debt to the credit reporting agencies. Defendant did not include in the report that plaintiff disputed the debt.

Plaintiff states in the affidavit attached to his complaint that he sent letters to defendant telling them that the hospital bills were not his responsibility. At his deposition, he explained that he sent the letters by certified mail, but admitted he did not receive any receipts showing that the letters were delivered. He further explained that he knew the letters were not delivered to defendant because he called defendant and they told him they did not receive the letters. (Mellinger dep., 44-47).

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"

3

Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## ANALYSIS

15 U.S.C. 1692e(8) of the Fair Debt Collection Practices Act ("Act") forbids debt collectors from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to

4

communicate that a disputed debt is disputed." Plaintiff accuses defendant of violating this provision by reporting the debts to credit reporting agencies without noting that plaintiff disputed the debts.

There is no evidence that plaintiff contacted Rochester Emergency Group to claim that he did not owe the debts. Plaintiff testified that he left the matter for his wife to resolve, even though the bills came in his name, and even though he knew that his failure to address the matter would result in the bills being placed on his credit report. (Mellinger dep., 32-36). There is also no evidence in the record that plaintiff ever communicated to defendant that he did not owe the $176 debt. All of the evidence and argument in this case surrounds the $120 debt.

Defendant's account records show that on May 8, 2010 plaintiff called defendant and told defendant's employee, Debra, that the $120 bill was incurred by his wife. The entry reads:

> HE SAID THAT THIS IS FOR HIS WIFE.  HE SAID THAT THE [sic] SHOULD NOT BE BILLED FOR THIS AMOUNT.  HE SAID THAT THE [sic] HAS INSURANCE IN HIS NAME.  ASKED IF THEY WERE SEPARATED?  HE SAID THAT SHE IS BACK AND FORTH IN THE HOUSE.  WOULD LIKE THE MEDICAL BILL TAKEN OUT OF HIS NAME AND PLACED IN HERS.  HE SAID THAT OTHERWISE HE WILL BE PAYING FOR ALL KINDS OF MEDICAL BILLS.  ADV HIM WOULD RESEARCH AND CONTACT HIM BACK NEXT WEEK.

(Plaintiff's Ex. 2). An entry on May 28, 2010 shows that defendant called plaintiff, who explained that he had called Rochester Emergency Group about the bill, and they told him that his wife should be responsible for the bill. (Id.) On June 4, 2010, plaintiff called defendant, and according to defendant's records: "SAID THIS IS HIS WIFE'S BILL." (Id.) Defendant's account record following that phone call also states "DEBTOR

5

NONCOMMIT." (Id.) Defendants' manager, Stacy Vaughn, testified that an indication of "noncommital" means that plaintiff was not willing to pay the bill, but he was also not refusing to pay the bill.

The Act requires that a debt collector provide a consumer with written notice, containing specific information and warnings, early on in connection with the collection of a debt. Section 1692g(a) outlines the contents of the written notice, which must be provided within five days after the initial communication with a consumer:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty-days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different rom the current creditor.

15 U.S.C. 1692g(a).

There is a circuit split on the issue of whether a dispute by a consumer as to the validity of the debt must be in writing to be effective. In 1991, the Third Circuit Court of Appeals held that 15 U.S.C. 1692g(a)(3) "contemplates that any dispute, to be effective, must be in writing . . . " even though the statutory language does not expressly require that a dispute be in writing. Graziano v. Harrison, 950 F.2d 107, 112 (3rd Cir. 1991).

As defendant points out, at least one district court in the Sixth Circuit followed Graziano's requirement that a dispute be in writing. See, Diamond v. Corcoran, 1992 WL 12647817, *2 (W.D., Mich.).

The Ninth Circuit, however, has held that a debt may be orally disputed under §1692g(a)(3) for purposes of invoking § 1692(e)(8). Camacho v. Bridgeport Financial Inc., 430 F.3d 1078, 1080 (9th Cir. 2005). The court looked at the plain meaning of subsection (3), which does not require the notice to specify how a dispute is communicated (verbally or orally), just that the dispute occur within 30 days after receipt of the notice. In contrast, the notice is required to specify that certain actions by the consumer must be in writing: subsection (4) provides that a debtor's request for verification of a debt is triggered by a written dispute of that debt, and subsection (5) provides that a request by the consumer for the name and address of the original creditor, if different from the current creditor, must be made in writing. See also, Brady v. Credit Recovery Co., 160 F.3d 64, 66 (1st Cir. 1998) (using rules of statutory construction to conclude that § 1692(e)(8) does not impose a writing requirement on consumers who wish to dispute a debt).

This court finds the reasoning employed by the Ninth and First Circuits persuasive, especially because the very section at issue requires that the debt collector's first notice of debt inform the consumer they have certain rights which must be pursued in writing, while not specifying that the dispute of a debt must likewise be in writing. Interestingly, subsection 1692g(b) addresses disputed debts, providing that collection activities may continue during the thirty day period referred to in subsection

7

(a), *unless the consumer notifies the debt collector in writing that the debt is disputed.* In the case of a written dispute, collection of the disputed debt must cease until the debt collector obtains verification of the debt and mails same to the consumer. A written dispute therefore triggers certain duties on the part of the debt collector that are spelled out in the statute. This is not inconsistent with the court's reading of the statute which is that a verbal dispute of a debt is sufficient to find a debt collector to be in violation of § 1692e for communicating credit information which is known to be false, including the failure to communicate that a disputed debt is disputed.

Under the facts of this case, the court concludes that plaintiff's oral communications with defendant were, in fact, a dispute as to the $120 debt. However, the finding that plaintiff orally disputed the $120 debt does not end the analysis. Such a dispute must be made within thirty days of receiving the initial notice of debt required in §1692g(a)(3).

Defendant's letter history appears on the last page of the account history, and was submitted as Exhibit 2 to plaintiff's motion for summary judgment. The letter history shows that on March 8, 2010, a "1st Collection Letter" was processed. This letter was submitted as Exhibit 9 to defendant's response to plaintiff's motion for summary judgment. When asked about the letter at his deposition, plaintiff admitted that there were several letters sent to him by defendant which he did not produce in discovery because he either lost them or threw them away. (Mellinger dep., pp. 42-43). At oral argument, plaintiff raised the issue that the account history notes begin on March 18, 2010, and they do not include a March 8, 2010 "1st Collection Letter." According to plaintiff, the first notice is reflected in an April 12, 2010 entry: "Dunning letter 911: TRW

NOTIFICATION LTR requested".  At her deposition, Stacy Vaughn explained that the first collection letter on plaintiff's $120 debt was the March 8, 2010 letter, referring to the letter history section of the account.  (Vaughn dep., p. 44).  When asked by plaintiff's counsel why the letter was not reflected in the account history, Vaughn testified, "I don't understand why it is not."  (Id. at 45).  She speculated as to the reason the letter might not have shown up in the account history, "It depends, actually, on how they are done. If they are done mass, like I do, they generally are [in the notes].  If they are done through the letter requester, they may not show up."  (Id. at 53).  Vaughn explained that the April 12, 2010 letter was referred to as a TRW letter because it notifies the debtor that the debt is going to be reported to a credit reporting agency.  She stated that the TRW letter is the second letter that is sent out to a debtor.  (Id. at 45-46).

Even though the March 8, 2010 letter does not appear in the account history, it does appear in the letter history and as an exhibit in this case.  Unlike the TRW letter dated April 12, 2010, the March 8 letter complies with the requirements of a first notice in §1692g(a).  There is a plausible explanation for why it might not have shown up in the account history, and, finally plaintiff admits he lost or threw away several letters sent to him by defendant.  Viewing all of the evidence in the light most favorable to plaintiff, there is no record support for his position that the first notice to be sent by defendant was the TRW letter on April 12, 2010, as opposed to the March 8, 2010 letter.

The evidence establishes that notice was sent to plaintiff on March 8, 2010, making plaintiff's oral dispute on May 8, 2010, well outside the thirty days required by §1692g(a)(3) for disputing the validity of a debt.  Pursuant to the Act, defendant was entitled to presume the debt was valid, and did not have an obligation to communicate

9

that the debt was disputed when reporting it to credit reporting agencies. 15 U.S.C. § 1692e(8).

Plaintiff asserts a violation of 15 U.S.C. 1692f(1) for unfair practices as well, based on the allegation that plaintiff sent a letter to defendant requesting proof that he owed the debt. The evidence shows that the letters claimed to be sent by plaintiff never reached defendant. Therefore, this claim must be dismissed.

Plaintiff alleges a violation of 15 U.S.C. 1692g(b), claiming that defendant continued to pull and record plaintiff's credit report without verifying that plaintiff owed the debt. Defendant cites to Ms. Vaughn's deposition, where she testified that she did not pull plaintiff's (or his wife's) credit report, nor did she give anyone a copy of plaintiff's credit report. (Vaughn dep. 104). Plaintiff has not submitted any evidence to contradict this testimony. Furthermore, this section regarding disputed debts is not invoked without a writing by the consumer within thirty days of the initial notice described in §1692g(a). There is no writing by plaintiff at all in this case.

Plaintiff next alleges a violation of 15 U.S.C. 1692d(2), which prohibits a debt collector from harassing an individual in connection with the collection of a debt. No evidence has been provided by plaintiff to support this claim.

Plaintiff's state law claims mimic his federal claims and must be dismissed for the same reasons discussed above.

The court notes that once notified by the Credit Reporting Agency that the bills should be changed from plaintiff's name to his wife's name, defendant made the requested change. (Vaughn dep., 33-37). The hospital bills at issue no longer exist on plaintiff's credit report.

CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is DENIED and defendant's motion for summary judgment is GRANTED.

Dated: February 8, 2012

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on February 8, 2012, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk